85 So.2d 865 (1956)
Mrs. Grace WEIR, Appellant,
v.
PALM BEACH COUNTY, and the State Road Department of the State of Florida, Appellees.
Supreme Court of Florida. Special Division A.
March 7, 1956.
*866 Anderson, Scott, McCarthy & Preston and Dwight Sullivan, Miami, for appellant.
Harry A. Johnston and Henry F. Lilienthal, West Palm Beach, for Palm Beach County.
Bryan W. Henry, Miami, for State Road Department of Florida.
THORNAL, Justice.
Appellant Weir who was plaintiff below appeals from a decree of the Chancellor sustaining a motion to dismiss her amended complaint.
The complaint in equity consisted of five "counts". It alleges that plaintiff owned certain realty in Delray Beach bounded on the north by Atlantic Avenue and on the east by Canal Avenue, which is paralleled on the east by the Intracoastal Waterway. A building facing Atlantic Avenue was located on the property and a parking lot to the rear of the building was accessible from Atlantic Avenue via Canal Avenue. The two streets intersected.
Beginning in October, 1951, and continuing until early 1953 it is alleged that the defendants engaged in a highway construction program which included the resurfacing and widening of Atlantic Avenue and replacement of a bridge over the Intracoastal Waterway. In count 1 appellant alleged that in the course of the construction program the defendants removed part of the public sidewalk; took part of plaintiff's land and destroyed the lateral support for plaintiff's land thereby causing the building to settle and crack. Count 2 claims damages for loss of business due to the prolonged period of construction. Count 3 claims damages for destroying the access to plaintiff's parking lot from Atlantic Avenue via Canal Avenue which resulted from the building of a retaining wall across the north end of Canal Avenue where it intersects Atlantic Avenue thereby eliminating entrance into Canal Avenue from Atlantic Avenue, except by a circuitous route running west and south of plaintiff's property. Count 4 claims loss of business and damages through enforced reduced rentals resulting from the construction of the retaining wall along the south boundary of Atlantic Avenue and in front of plaintiff's building forcing prospective customers to descend one of several flights of stairs in order to enter plaintiff's building and also destroying the view from the building. Count 5 was a composite claim that by committing the acts alleged the defendants have taken part of plaintiff's property for the benefit of the public without compensation to the plaintiff thereby resulting in unjust enrichment of the defendants to the damage of the plaintiff. The complaint prays for restitution of the benefits acquired at plaintiff's expense or in the alternative a decree compensating plaintiff for loss of such benefits. Motions to dismiss the complaint were sustained and final decree entered for the defendants.
Although count 1 contains the bald allegation that the "defendants took part of plaintiff's land," it is not shown what part or how much of plaintiff's land was taken and in actuality it is conceded that the defendants did not in fact physically appropriate any part of the land itself. The complaint is grounded on the theory that the damages suffered by the plaintiff as a result of the improvement of the public way are tantamount to a "taking" of plaintiff's property without compensation in contravention of our constitutional requirements. The relief sought is to compel restitution by compelling the defendants to exercise the power of eminent domain whereby the damages suffered by the plaintiff might be *867 assessed and restitution accordingly made. We are confronted with the question whether removal of lateral support from real estate upon which a building has been constructed or interference with ingress, egress and view or interference with convenient accessibility all resulting from improvement of a public way and not involving any actual taking or physical invasion of the land of the complaining property owner is compensable as a "taking" under the Florida Constitution.
Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A., reads:
"No person shall be subject to be twice put in jeopardy for the same offence, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken without just compensation." (Emphasis ours.)
Section 29 of Article XVI of the Florida Constitution reads:
"No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."
If the damage suffered by the plaintiff is the equivalent of a "taking" or an appropriation of plaintiff's property for public use, then our Constitution itself recognizes the plaintiff's right to compel compensation. On the other hand, if the damage suffered is not a taking or an appropriation within the limits of our organic law, then the damages suffered are damnum absque injuria and compensation therefor by the defendants cannot be compelled.
Appellant relies on State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868, wherein the owner of a water-operated sawmill was allowed compensation for the raising of the water level in his millrace thereby reducing capacity of the mill as the result of the filling in of a swamp by the State Road Department. There is a difference which should be pointed out. In the Tharp case, the fill constructed by the Road Department actually resulted in physical invasion of the property owner's millrace by causing an additional three feet of water to back up into the millrace itself. We had no such physical invasion in the case at bar. Here the government neither directly nor indirectly entered upon the actual property of the appellant.
With reference to the alleged destruction of lateral support, the appellant apparently overlooked the proposition that the right to lateral support from adjoining land applies only to the land in its natural state and does not extend to lands burdened by a building. Some authorities make an exception that damages can be recovered if the excavation destroying the lateral support is negligently made. We are not concerned with this exception for the reason that the complaint does not allege negligence in the excavation work in the case before us. See Crum v. Sumter County, 68 Fla. 122, 66 So. 723.
We find no Florida case directly on this point. However, the Supreme Court of Alabama in H.H. Parker & Bro. v. Hodgson, 172 Ala. 632, 55 So. 818, 819, held:
"It is a settled principle of law that the right to lateral support applies to the land in its natural condition, and an adjoining landowner cannot by erecting buildings on the margin of his own land deprive the owner of the attingent lot of the right to excavate his own lot up to the line of his neighbor's property, though on account of the additional burden placed upon the land, by the erection of the house thereon, said house may fall, by reason of the withdrawal of the lateral support."
The rule is well stated in 1 Am.Jur., Adjoining Landowners, Sec. 21, p. 519, as follows:

*868 "The easement of natural support of the land of one by the land of the adjoining owner applies only to lands in their natural condition, and does not extend so as to give the owner of a building erected on the confines of his land the right to have support for his increased burden resulting in increased lateral pressure. One landowner cannot, by altering the natural condition of his land, deprive the adjoining proprietor of the privilege of using his own land as he might have done before; and consequently, he cannot, by building a house near the margin of his land, prevent his neighbor from excavating his own soil, even though it may endanger the house." (Emphasis ours.)
See also Annotation to Prete v. Cray, 49 R.I. 209, 141 A. 609, 59 A.L.R. 1241.
The rule is also announced in Vol. 1 of Elliott on Roads and Streets, Sec. 229, as follows:
"It has been held that an owner whose land adjoins a public street is entitled to have the lateral support of his land remain undisturbed, and that a wrongful destruction of it is a taking within the meaning of the constitution. Lateral support is the right which soil in its natural state has to support from land adjoining it. One of the old principles of the law is that soil in its natural state is entitled to this support, but the rule does not go farther than this, for the right to support extends only to the soil, and not to structures placed upon it. There is, therefore, much reason for holding that the destruction of the right of lateral support, giving to the term its true legal signification, is a taking of property, but when we undertake to extend the doctrine so far as to embrace a right to support for the soil burdened with structures there is difficulty. The general rule is that, after the right to a street has been acquired, the municipal corporation may use it as a private owner may do his own property, and, as a private owner is not bound to leave support for soil burdened with buildings, it would follow that a public corporation is under no greater obligation." (Emphasis ours.)
In applying a constitutional provision similar to our own, the Supreme Court of Indiana in Freigy v. Gargaro Co., 1945, 223 Ind. 342, 60 N.E.2d 288, 290, held:
"Public work resulting in withdrawal of lateral support does not constitute a taking within our constitutional provision that `No man's property shall be taken by law, without just compensation * * *.' * * * As said in Brown v. State [211 Ind. 61, 5 N.E.2d 527], this is settled in Indiana, although in other states and under varying constitutional provisions the rule is otherwise. See notes 7 A.L.R. 806, 38 A.L.R. 19 and 44 A.L.R. 1494."
Any contrary view would enable an abutting property owner to construct a building on his land in such fashion that in many cases it would completely stultify the improvement of the public way in the public interest. For a helpful discussion on the question of damages to private property caused by negligence of government agents as a "taking" for public purposes see Annotation 2 A.L.R.2d 677.
As to "count 1" of the complaint in this case, therefore, we hold that under the language of the Florida Constitution, the alleged destruction of lateral support to the property of the plaintiff upon which a building had been established is not a taking or appropriation for which compensation must be paid.
The other counts of the complaint deal with alleged impairment of ingress and egress as well as previously existing view. The complaint does not allege that the plaintiff was totally deprived of ingress or egress to her property. It does allege that she has been deprived of the view of the Intracoastal Waterway.
The owner of property abutting a public way has a right of ingress to and egress *869 from his property as well as a right to enjoy the view therefrom. However, these are rights which are subordinate to the underlying right of the public to enjoy the public way to its fullest extent as well as the right of the public to have the way improved to meet the demands of public convenience and necessity. If the improvement for the benefit of the public interferes with the pre-existing means of ingress and egress and view enjoyed by the individual property owner, without an actual physical invasion of the land of the property owner, then again we have a situation where the individual right is subordinate to the public good and any alleged damage suffered is damnum absque injuria. This is so for the simple reason that one who acquires property abutting a public way acquires it subject and subordinate to the right of the public to have the way improved to meet the public need. See Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394; Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; Dorman v. City of Jacksonville, 13 Fla. 538. Supporting authorities are cited in the able dissenting opinion of the late Chief Justice Mathews in State Road Dept. of Florida v. Lewis, Fla. 1955, 79 So.2d 699, where the majority view was grounded on a question of pleading and not on the merits of controversy.
We, therefore, hold that the interference with the so-called consequential rights of the plaintiff under the facts alleged in this complaint are not tantamount to the "taking" or appropriation of plaintiff's property for which the Florida Constitution requires compensation.
We have not heretofore commented on the problem of whether the claims of the plaintiff are grounded upon a tort against which both defendants are immunized from liability. Section 341.25, Florida Statutes, F.S.A., reads in part as follows:
"Suits at law and in equity may be brought and maintained by and against the state road department of the State of Florida on any claim under contract for work done; provided, that no suit sounding in tort shall be maintained against the said state road department." (Emphasis ours.)
It has long been the rule that counties are not liable for torts. See Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372.
Although no negligence is alleged, at the same time the plaintiff fails to base her cause "on any claim under contract for work done" which is stipulated as a condition to suit against the State Road Department. Actually, the concluding prayer is "for restitution of the benefits which defendants have tortiously acquired at plaintiff's expense". Certainly, the alleged wrongful acts sound in tort and having heretofore determined that the alleged acts of defendants are not the equivalent of a taking or an appropriation of the plaintiff's property that would enable the plaintiff to invoke the self-executing provisions of the Constitution in her behalf, we now also hold that the claims asserted sound in tort and that suit against both defendants upon such claims is barred by the immunity of the sovereign, absent statutory consent. No such consent is here present.
Other errors assigned have been carefully considered but have been found to be without merit.
Finding no error, the decree of the Chancellor is
Affirmed.
DREW, C.J., HOBSON, J., and MILLEDGE, Associate Justice, concur.