FOR PUBLICATION
   

ATTORNEYS FOR APPELLANT
: 
ATTORNEY FOR APPELLEE
:

WILLIAM H. WOLF ROBERT W. ROCK

MICHAEL R. BURROW
 Anderson, Indiana 

Wolf & Burrow

Greenfield, Indiana

IN THE

COURT OF APPEALS OF INDIANA

DONALD JENKINS, )

)

Appellant-Plaintiff, )

)

vs. ) No.  33A05-9611-CV-447

)

BOARD OF COUNTY COMMISSIONERS OF )

MADISON COUNTY, INDIANA, )

)

Appellee-Defendant. )

APPEAL FROM THE HENRY CIRCUIT COURT

The Honorable John L. Kellam, Judge

Cause No.  33C01-9405-CP-37

September 15, 1998

OPINION - FOR PUBLICATION

RUCKER, Judge

Landowner Donald Jenkins appeals from a trial court judgment denying him damages in an inverse condemnation proceeding.  Two issues are raised for our review which we consolidate and rephrase as whether the trial court erred in determining that Jenkins' property had not been taken.  We affirm.

Jenkins owns a seventy-acre tract of unimproved farmland in Madison County.  Prior to the activity giving rise to this litigation the southwest corner of the tract was bordered by County Road West (also referred to as "Raible Avenue") and Cross Street.  Raible Avenue runs adjacent to Jenkins' property, a distance of over three thousand (3,000) feet.  Traffic traveling north on Raible Avenue was required to make a right-hand turn onto Cross Street and then a left-hand turn to continue traveling along Raible Avenue.  In sum the two thoroughfares formed a "double T-intersection."  In August of 1992 the Board of County Commissioners of Madison County ("Board") relocated a portion of Raible Avenue in order to form an "S-curve" to the west of Jenkins' land.  The S-curve was constructed to eliminate the double T-intersection thereby allowing traffic to proceed straight on Raible Avenue without the necessity of making a turn onto Cross Street.  Utilizing its power of eminent domain, the Board acquired property from Jenkins' neighbor to accomplish the project.  Following the new construction, approximately 675 feet of Raible Avenue was no longer  adjacent to Jenkins' property.  The surface and base of the roadway were removed.  In response Jenkins filed a Complaint for Inverse Condemnation claiming loss of ingress and egress, road frontage, and corner influence.  Following an evidentiary hearing, the trial court entered judgment in favor of the Board.  This appeal followed. 

Jenkins concedes that none of his property was physically taken.  He contends, however, the removal of 675 feet of road bed deprived him of his right of ingress and egress and resulted in the diminution of the value of his property.
  There are two stages in an action for inverse condemnation.  The first stage involves the issue of whether a taking of property has occurred.  At this stage, the landowner must show that he has an interest in land which has been taken for a public use without having been appropriated under eminent domain laws.  
City of Hammond, Lake County v. Drangmeister
, 173 Ind.App. 476, 364 N.E.2d 157, 159 (1977).  If the trial court finds that a taking has occurred, then the matter proceeds to the second stage where the court appoints appraisers and damages are assessed.  
Id.
  In this case the matter never proceeded beyond the first stage.  The trial court determined there was no taking and thus appraisers were not appointed. 

It has long been recognized that the right of ingress and egress is a property right which cannot be taken without compensation.  
Yater v. Hancock County Planning Comm'n
, 614 N.E.2d 568, 577 (Ind. Ct. App. 1993), 
cert. denied
, 511 U.S. 1019, 144 S. Ct. 1401, 128 L. Ed. 2d 73
; 
 
State v. Lovett
, 254 Ind. 27, 38, 257 N.E.2d 298, 304 (1970).  What constitutes a 'taking' of property in eminent domain is not always clear.  However it does include "any substantial interference with private property which destroys or impairs one's free use and enjoyment of the property or one's interest in the property."  
Board of Comm'rs of Vanderburgh Cty. v. Joeckel
, 407 N.E.2d 274, 278 (Ind. Ct. App. 1980), 
trans. denied
.
  Whether the interference is substantial is a factual question which must be resolved in each case by the trier of fact.  
Indiana & Michigan Elec. Co. v. Stevenson
, 173 Ind.App. 329, 363 N.E.2d 1254, 1259 (1977), 
trans. denied
.  The question in this case therefore is whether the removal of 675 feet of road bed substantially interfered with Jenkins' right of ingress and egress to Raible Avenue and his abutting property. 

Among other things the trial court determined that the removal of the road bed represented a seventeen percent (17%) loss of total road frontage and concluded that there was no substantial and material interference with Jenkins' rights of ingress and egress.  R. at 212.  The trial court also concluded there was no "compensable taking."  
Id.
  Jenkins does not challenge the accuracy of the trial court's calculations.  He contends however that the trial court exceeded its authority.  Specifically, seizing on the trial court's use of terminology  
Jenkins contends the trial court went beyond its role in these proceedings because the question of whether there is a compensable taking is a matter for a jury's determination.  In support of his position Jenkins cites 
State v. Stefaniak
, 250 Ind. 631, 238 N.E.2d 451 (1968). 
 
Stefaniak
 involved an inverse condemnation action where the question of damages was submitted to the jury.  The jury returned a verdict in favor of the landowners and the State appealed.  The State conceded that the landowners' property had been reduced in value by $5,000.00 but contended that damages were not compensable because they were merely incidental and constituted only inconveniences.  This court disagreed and held "when presented with the fact that appellees' dwelling is now in violation of the zoning ordinances, located on a cul-de-sac and has suffered a substantial loss in value because of the construction, it is our opinion that the question of a compensable taking is a matter for the jury's determination."  
Id.
 at 455.  

In part 
Stefaniak
 stands merely for the proposition that once an inverse condemnation action advances to the second stage of the proceedings the jury determines damages.  That is, the jury determines whether and to what extent the taking is compensable.  In this case the action never advanced to the second stage.  Thus the trial court, as fact-finder in the first stage of the proceedings, was obligated to determine whether there had been a "taking" of Jenkins' property.  It is obvious the trial court's use of the term "compensable taking" was intended simply to underscore that there had been no taking and thus Jenkins was not entitled to compensation.  The evidence of record supports the trial court's determination.  At most the record demonstrates that Jenkins was inconvenienced in obtaining access to his property.  For example Jenkins argues that because of the removal of the road bed he had to construct a new field entrance in order that his tenant could continue farming the tract of land.  Testifying at the hearing Jenkins conceded that he continues to have access to his property.  However the access is now in a different location.  A property owner is not entitled to unlimited access to abutting property at all points along the highway.  
State v. Ensley
, 240 Ind. 472, 491, 164 N.E.2d 342, 348 (1960).  Further, the fact that ingress and egress is made more circuitous and difficult does not itself constitute a taking of private property.  
Id.
  The facts presented at the evidentiary hearing support the trial court's conclusion that there has been no substantial interference with Jenkins' right of ingress and egress.  Accordingly as a matter of law Jenkins' property has not been taken in the context of eminent domain.  We find no error on this point.

Jenkins also contends the trial court erred in failing to consider the highest and best use of his property.  More specifically, pointing to evidence of record that the highest and best use of his seventy-acre tract is that of commercial and residential development, Jenkins contends the rerouting of Raible Avenue which deprived him of a valuable corner location  diminished the property's value and that too constitutes a taking.  We acknowledge there is authority for the proposition that a "taking" within the meaning of eminent domain includes the "diminution in value" of a landowner's property.  
See
 I.L.E. Eminent Domain § 34.  However "highest and best use" represents a component of damages to be considered once the issue of taking is resolved in favor of the landowner.  Stated differently, once a taking has been established, then damages may be based upon the highest and best use of the property at the time of the taking.  
City of Gary v. Belovich
, 623 N.E.2d 1084, 1088 (Ind. Ct. App. 1993).  Where, as here, there has been no taking the question is whether the action of the governmental entity diminished the value of the property in its present use.  The record is clear that Jenkins is presently using his property as farmland.  There is no evidence that as farmland the value of Jenkins' property has been reduced by reason of the relocation of Raible Avenue.  The trial court was correct in not considering the highest and best use of Jenkins' property when determining whether the property had been taken in the context of eminent domain.  We find no error here. 

Judgment affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.